675 A.2d 324

**Linda M. MIKETIC, M.D., Appellant**

**v.**

**Richard L. BARON, M.D. and Orlando F. Gabriele, M.D.**

Superior Court of Pennsylvania.

Argued Feb. 29, 1996.

Filed April 17, 1996.

92

Paul R. Yagelski, Pittsburgh, for appellant.

Martha H. Munsch, Pittsburgh, for appellees.

Before CIRILLO, P.J.E., and SAYLOR and EAKIN, JJ.

CIRILLO, President Judge Emeritus:

Linda Miketic, M.D. (Dr. Miketic) appeals from an order entered in the Court of Common Pleas of Allegheny County granting judgment on the pleadings in favor of appellees Richard Baron, M.D. (Dr. Baron) and Orlando Gabriele, M.D. (Dr. Gabriele). We affirm.

Dr. Miketic, a specialist in radiology, filed a complaint in defamation against Drs. Baron and Gabriele. Dr. Miketic alleges in her complaint that she was employed on a year to year basis by the Radiology Department of the University of Pittsburgh School of Medicine (the University) and at SRT Radiologists (SRT), a clinical practice plan within the University. Dr. Gabriele was Dr. Miketic's immediate supervisor. Dr. Baron, to whom Dr. Gabriele reported, was the Chairman of the Department of Radiology. In January, 1994, Dr. Miketic was told that her faculty appointment at the University and her employment agreement with SRT would not be renewed and would terminate on June 30, 1994. Upon receiving this notification, Dr. Miketic availed herself of the University's appeal process. Initially, Dr. Miketic demanded a written statement of the reason for her non-renewal. Upon receiving such a statement, Dr. Miketic filed an appeal to an internal appeals committee.

A hearing was held, at which Dr. Miketic was shown a two page letter dated November 23, 1993, written by Dr. Gabriele and addressed to Dr. Baron.[1] Dr. Miketic's complaint alleges

1. According to the complaint, Dr. Miketic had fortuitously come across this letter in early December, 1993 when she requested a copy of her curriculum vitae from Dr. Gabriele's secretary. The secretary gave a

that the letter contained false, disparaging, and defamatory statements, and that Dr. Gabriele published these statements to Dr. Baron, and that both Dr. Gabriele and Dr. Baron provided it to the Dean of the University's School of Medicine and to the University appeals panel. In her complaint, Dr. Miketic claims that the letter reported the following:

a. That Dr. Miketic engaged in gross insubordination;

b. That Dr. Miketic acted as though she was not subject to Dr. Gabriele's or Dr. Baron's authority;

c. That Dr. Miketic falsely identified herself as Chief of Oncologic Radiology using a title she had no authority to use;

d. That Dr. Miketic was unable to maintain appropriate and professional rapport and communication with colleagues in the Department of Radiology;

e. That Dr. Miketic did not make herself available to the Department of Radiology;

f. That Dr. Miketic was unreasonable;

g. That Dr. Miketic lacked concern for prior commitments by Department of Radiology supervisory personnel;

h. That Dr. Miketic was not responsive to colleagues;

i. That Dr. Miketic would not respond to Dr. Gabriele's instructions;

j. That Dr. Miketic would not respond to Dr. Baron's instructions;

k. That Dr. Miketic felt that she was responsible to a higher authority outside of the Department of Radiology; and

l. That Dr. Miketic had a long history of the above-stated problems.

Drs. Baron and Gabriele filed an amended answer and new matter to Dr. Miketic's complaint, and thereafter filed a motion for judgment on the pleadings. Oral argument was

computer disk full of documents to Dr. Miketic, which contained the letter at issue. At the time Dr. Miketic initially discovered the letter, according to the complaint, she was unsure whether the letter had been disseminated, or whether it was a draft document or final document.

held on this motion, and the Honorable Bernard J. McGowan entered judgment on the pleadings in favor of Drs. Baron and Gabriele. Specifically, the trial court concluded that Drs. Baron and Gabriele had an absolute privilege to state their position regarding Dr. Miketic's non-renewal. In so finding, the trial court rejected Dr. Miketic's claim that a conditional privilege should apply. The court found that even if a conditional privilege were to apply, Dr. Miketic alleged no facts in her complaint which would support an abuse of a conditional privilege.

Dr. Miketic raises the following issue for our consideration: Did the trial court err in granting judgment on the pleadings by misreading appellant's defamation complaint as setting forth only two actionable publications, both of which it found to be absolutely privileged? [2]

Specifically, Dr. Miketic argues that the publications were conditionally privileged as opposed to absolutely privileged, that the trial court failed to analyze her allegation that publication was made to the dean of the University, and that her complaint adequately alleged abuse of the conditional privilege.

When reviewing the grant of judgment on the pleadings, we employ the following standard:

A motion for judgment on the pleadings should be granted only where the pleadings demonstrate that no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law. Thus, "[i]n reviewing a trial court's decision to grant judgment on the pleadings, the scope of review of the appellate court is plenary; the reviewing court must determine if the action of the trial court was based on a clear error of law or whether there were facts disclosed by the pleadings which should properly go to the jury." An appellate court must accept as true all well-pleaded facts of the party against whom the motion is

2. In her statement of questions involved, Dr. Miketic raises five sub-issues relating to her main issue on appeal. We need not reiterate these, as each is subsumed by the above-stated issue.

made, while considering against him only those facts which he specifically admits.... Only when the moving party's case is clear and free from doubt such that a trial would prove fruitless will an appellate court affirm a motion for judgment on the pleadings.

*American Motorists Ins. Co. v. Farmers Bank,* 435 Pa.Super. 54, 58, 644 A.2d 1232, 1234 (1994) (quoting *Kelly v. Nationwide Ins. Co.,* 414 Pa.Super. 6, 9–10, 606 A.2d 470, 471–72 (1992) (citations omitted)).

■ By way of background, in an action for defamation, the plaintiff must prove: (1) the defamatory character of the communication; (2) publication by the defendant; (3) its application to the plaintiff; (4) understanding by the recipient of its defamatory meaning; (5) understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm to the plaintiff; and (7) abuse of a conditionally privileged occasion.[3] *Maier v. Maretti,* 448 Pa.Super. 276, 671 A.2d 701, 704 (1995) (citing 42 Pa.C.S.A. § 8343(a)); *see also Elia v. Erie Ins. Exchange,* 430 Pa.Super. 384, 388, 634 A.2d 657, 659 (1993), *alloc. denied,* 537 Pa. 662, 644 A.2d 1200 (1994); *Agriss v. Roadway Exp., Inc.,* 334 Pa.Super. 295, 304, 483 A.2d 456, 461 (1984). When relevant to the defense, the defendant has the burden of proving (1) the truth of the defamatory communication; (2) the privileged character of the occasion on which it was published; and (3) the character of the subject matter of defamatory comment as of public concern. *Elia,* 430 Pa.Super. at 390, 634 A.2d at 660 (citing 42 Pa.C.S.A. § 8343(b)).

■ "Depending upon the importance of the publisher's actions to society, the privilege may be absolute or conditional/qualified." *Elia,* 430 Pa.Super. at 390, 634 A.2d at 660. Liability for publication of defamatory matter may be defeated by a privilege to publish the defamation. One who

---

**3.** The question of whether the communications at issue are capable of a defamatory meaning is not an issue before this court. We note that Drs. Baron and Gabriele initially filed preliminary objections in the nature of a demurrer alleging that the complaint failed to state a cause of action for defamation because it failed to allege, as a matter of law, publication of false statements capable of a defamatory meaning. The trial court overruled these preliminary objections.

publishes defamatory matter within the scope of an **absolute privilege** is immune from liability regardless of occasion or motive. *Sciandra v. Lynett,* 409 Pa. 595, 187 A.2d 586 (1963). However, such a privilege may be lost if the publisher exceeds the scope of his privilege by publishing the defamation to unauthorized parties. It is a question of law whether privilege applies in a given case, but a question of fact for the jury whether a privilege has been abused. *Montgomery v. City of Philadelphia,* 392 Pa. 178, 140 A.2d 100 (1958); *see also Smith v. Griffiths,* 327 Pa.Super. 418, 476 A.2d 22 (1984).

*Agriss,* 334 Pa.Super. at 308, 483 A.2d at 463 (emphasis added).

 We initially examine the trial court's conclusion that Drs. Baron and Gabriele had an absolute privilege to state their position concerning Dr. Miketic's non-renewal to the appeals committee.[4] In *Yetter v. Ward Trucking Corp.,* 401 Pa.Super. 467, 585 A.2d 1022 (1991), *alloc. denied,* 529 Pa. 623, 600 A.2d 539 (1991), a defamation action arose out of statements communicated to the appellant in a letter written by an employee of the appellee trucking company. There, we stated:

Consistent with a policy favoring private resolution of disputes between employers and employees, Pennsylvania law recognizes the absolute privilege of employers to publish defamatory matter in notices of employee termination. Thus, a letter articulating the reasons for an employee's termination **which is published only to the employee** " 'may not be made the subject of an action in libel, regardless of whether the allegations of cause are true or false and regardless of the actual motive behind the dismissal.' " *Agriss, supra,* 334 Pa.Super. at 310, 483 A.2d at 464[.] The

4. Dr. Miketic claims that the trial court misread her complaint and failed to realize that she had also alleged publication by Drs. Baron and Gabriele to Dr. Bernier, Dean of the University's Medical School. We find, however, that the trial court characterized the publication as being by "both defendants **through various academic officials** to the appeals committee." Thus, the trial court apparently considered the alleged publication by the appellees to the Dean.

purpose of the absolute privilege is to encourage the employer's communication to the employee of the reasons for discharge by eliminating the risk that the employer will possibly be subject to liability for defamation. Where the privilege is abused by the employer's publication of the defamatory material to unauthorized parties, the employer is no longer immune from liability.

*Id.* at 470, 585 A.2d at 1024 (citations omitted) (emphasis added). In *Yetter,* there were no allegations that the appellee communicated the contents of the letter to anyone other than the appellant; the dismissal of the appellant's complaint was affirmed by this court, which found that an absolute privilege applied.

Similarly, in *Sobel v. Wingard,* 366 Pa.Super. 482, 531 A.2d 520 (1987), the appellee wrote to the appellant informing him that his services as a teacher would no longer be required because of problems with lesson plans, the taking of attendance, and the preparation of the day's activities reports. This court, in affirming the trial court's order sustaining preliminary objections to the appellant's complaint, concluded that the remarks in question did not constitute defamation. We further stated:

In addition, . . . [a]n employer has an absolute privilege to publish defamatory matters in notices of employee terminations. *DeLuca v. Reader,* 227 Pa.Super. 392, 323 A.2d 309 (1974); *Agriss, supra.* This absolute privilege was extended in *Agriss* to include publications of defamatory material in warning letters. Moreover, evaluations of an employee by an employer are deemed to be consented to by the employee. *Baker v. Lafayette College,* 350 Pa.Super. 68, 504 A.2d 247 (1986). Consent is an absolute privilege. *Baker, supra.*

*Sobel,* 366 Pa.Super. at 486, 531 A.2d at 522. *See Baker, supra* (appellant college professor's consent to publication of formal evaluations of his performance by another professor gave the appellee college an absolute privilege against appellant's defamation claim); *Agriss, supra* (the publication of appellant employee's warning letter, under the collective bar-

gaining agreement between employee and appellee trucking company, was held to be absolutely privileged).

In light of this line of cases, the trial court concluded that an absolute privilege applied to the statements provided to the appeals committee. A review of Dr. Miketic's complaint reveals that the publication/letter was not addressed to her or initially made known to her. Also, there is nothing in Dr. Miketic's complaint to indicate that she consented to such a publication/evaluation. The question arises of whether or not to extend the absolute privilege to the instant set of facts.

We find it helpful to explore the original purpose of the absolute privilege. "The privilege, which includes judges, lawyers, litigants and witnesses, had its origin in defamation actions premised upon statements made during legal actions." *Panitz v. Behrend*, 429 Pa.Super. 273, 277, 632 A.2d 562, 564 (1993), *alloc. denied*, 539 Pa. 694, 653 A.2d 1232 (1994). The Pennsylvania Supreme Court explained:

> The reasons for the absolute privilege are well recognized. A judge must be free to administer the law without fear of consequences. This independence would be impaired were he to be in daily apprehension of defamation suits. The privilege is also extended to parties to afford freedom of access to the courts, to witnesses to encourage their complete and unintimidated testimony in court, and to counsel to enable him to best represent his client's interests.

*Binder v. Triangle Publications, Inc.*, 442 Pa. 319, 323–24, 275 A.2d 53, 56 (1971); *accord Rolla v. Westmoreland Health System*, 438 Pa.Super. 33, 36, 651 A.2d 160, 162 (1994); *Panitz*, 429 Pa.Super. at 277, 632 A.2d at 564.

The above cited law reflects the narrow scope intended for the grant of an absolute privilege. While there is certainly a strong argument in favor of finding that Drs. Baron and Gabriele had an absolute privilege to publish the letter at issue, we need not reach that question, as we find that the law more closely supports a finding of a conditional privilege.

In *Beckman v. Dunn*, 276 Pa.Super. 527, 419 A.2d 583 (1980), a panel of this court upheld the trial court's grant of

appellees' (university's and professor's) motion for judgment on the pleadings. There, appellant, a student, brought an action against the appellees for allegedly defamatory statements made in a letter from the professor to the university ombudsman concerning the student's request that the school reopen a decision regarding her failed attempt at a Ph.D. Specifically, this court found that the communication was not capable of defamatory meaning. *Id.* at 534, 419 A.2d at 587. This court further concluded that, as a matter of law, "even if the communication were capable of defamatory meaning, we agree with appellees' claim that the publication was made on a conditionally privileged occasion relieving appellees of any liability." *Id.*

In making such a finding, our court stated:

Communications made on a proper occasion, from a proper motive, in a proper manner, and based upon reasonable cause are privileged. *Baird v. Dun & Bradstreet, Inc.*, 446 Pa. 266, 285 A.2d 166 (1971); *Dempsky v. Double*, 386 Pa. 542, 126 A.2d 915 (1956).

" 'An occasion is conditionally privileged when the circumstances are such as to lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that facts exist which another sharing such common interest is entitled to know.' " *Rankin v. Phillippe*, 206 Pa.Super. 27, 30, 211 A.2d 56, 58 (1965), *quoting*, Restatement of Torts § 596 (1939).

Thus, proper occasions giving rise to a conditional privilege exist when (1) some interest of the person who publishes defamatory matter is involved; (2) some interest of the person to whom the matter is published or some other third person is involved; or (3) a recognized interest of the public is involved. *Keddie v. Pennsylvania State University*, [412 F.Supp. 1264 (M.D.Pa.1976) ]; *MacRae v. Afro–American Co.*, [172 F.Supp. 184 (E.D.Pa.1959) ].

*Beckman*, 276 Pa.Super. at 534–36, 419 A.2d at 587–88. In determining that "a proper occasion resulting in a conditional

privilege" existed in *Beckman*, this court found that the professor and ombudsman, both individually and as members of the university, had strong interests in the qualifications of those granted a Ph.D.

█ Once a matter is deemed conditionally privileged, the plaintiff must establish that the conditional privilege was abused by the defendant. *Elia*, 430 Pa.Super. at 392, 634 A.2d at 661; *Chicarella v. Passant*, 343 Pa.Super. 330, 337, 494 A.2d 1109, 1113 (1985). This court recognized in *Beckman* that:

> Abuse of a conditional privilege is indicated when the publication is actuated by malice or negligence, is made for a purpose other than that for which the privilege is given, or to a person not reasonably believed to be necessary for the accomplishment of the purpose of the privilege, or includes defamatory matter not reasonably believed to be necessary for the accomplishment of the purpose.

*Beckman*, 276 Pa.Super. at 536, 419 A.2d at 588 (citations omitted); *accord Elia*, 430 Pa.Super. at 392, 634 A.2d at 661. We concluded in *Beckman* that the pleadings failed to demonstrate as a matter of law that the professor's evaluation of the student/appellant's academic skills was a result of intentional, reckless or wanton conduct. *Beckman*, 276 Pa.Super. at 536, 419 A.2d at 588.

In *Daywalt v. Montgomery Hospital*, 393 Pa.Super. 118, 573 A.2d 1116 (1990), it was specifically stated that the conditional privilege "**applies to private communications among employers regarding discharge and discipline.**" *Id.* at 122, 573 A.2d at 1118 (emphasis added). There, this court upheld a summary judgment ruling in favor of appellees (a supervisor and hospital), concluding that the supervisor's communication to a personnel director and the payroll department of her suspicions concerning the appellant's alteration of appellant's time card was conditionally privileged. "A publication is conditionally privileged if the publisher reasonably believes

that the recipient shares a common interest in the subject matter and is entitled to know." *Id.* Specifically, this court found that the members of the payroll department and the personnel director shared the supervisor's interest in appellant's activities and had a common interest in the matters published. In recognizing that the plaintiff/appellant had the burden of pleading and proving abuse of privilege, 42 Pa. C.S.A. § 8343, this court concluded that the appellant failed to show any abuse of the privilege, the only indication being a vague statement in the complaint that the supervisor "wickedly intended" to cause the appellant harm; there was no suggestion of "spite, malice, or improper purpose." *Id.* at 124, 573 A.2d at 1119.

Recently, in *Maier, supra,* this court had another occasion to apply the law of conditional privilege. There, the appellant, an employee of Sears who was terminated, claimed that appellee, her supervisor, defamed her in a report to the branch manager and the personnel director. In upholding summary judgment in favor of the supervisor, this court found that the communication in question was not defamatory. Additionally, we concluded that, regardless of whether or not the communication was defamatory, the supervisor's report to the branch manager and personnel director was conditionally privileged and the appellant did not allege any genuine issue of material fact regarding the abuse of that privilege.

In the present litigation, appellant was suspended for refusal to work on Sundays and had filed an EEOC complaint; therefore, both appellee as appellant's supervisor and Sears' branch manager and personnel director had a common interest in appellant. As a supervisor, appellee correctly believed the branch manager had a right to know about incidents involving appellant. Furthermore, this court in *Rutherfoord v. Presbyterian–University* [, 417 Pa.Super. 316, 612 A.2d 500 (1992) ] concluded that communications among management-level persons concerning employee's job performance were necessary for the operation of the

department and therefore privileged.[5]

*Maier,* 448 Pa.Super. at 286, 671 A.2d at 706.

Applying the principles set forth above, we find that the instant case is an example of an occasion giving rise to a conditional privilege. Dr. Baron, a publisher of the letter, and Dr. Gabriele, recipient and publisher of the letter, clearly shared an interest in Dr. Miketic's performance, behavior, and attitude. As her superiors, they possessed a common concern in the matters published. The same holds true for the dean of the medical school and the members of the appeals panel who, due to their role in reviewing the decision not to renew Dr. Miketic's appointment, shared an interest in Dr. Miketic's supervisors' evaluation of her job performance.

As stated earlier, once a matter is deemed conditionally privileged, the plaintiff must establish that the defendant abused that privilege. *Elia, supra.* We agree with the trial court and find, as a matter of law, that Dr. Miketic's complaint failed to demonstrate facts which would support a finding that the publication was a result of malice or improper purpose. Specifically, Dr. Miketic's complaint alleges an abuse of privilege in a series of legal conclusions.

Pennsylvania is a fact pleading state. *Smith v. Brown,* 283 Pa.Super. 116, 423 A.2d 743 (1980). "Under the Pennsylvania system of fact pleading, the pleader must define the issues; every act or performance essential to that end must be set forth in the complaint." *Santiago v. Pennsylvania Nat. Mut. Cas. Ins. Co.,* 418 Pa.Super. 178, 183, 613 A.2d 1235, 1238 (1992); *see* Pa.R.C.P. 1019. Here, the complaint sets forth very few facts; Dr. Miketic does not adequately plead facts supporting abuse of privilege. Rule 1019(a) has been interpreted to mean that the complaint must not only apprise the defendant of an asserted claim, but it must also synopsize the essential facts to support the claim. *Krajsa v.*

5. Without performing an in-depth analysis of this issue, this court stated in *Rutherfoord:* "We agree that each alleged defamatory statement was conditionally, if not absolutely, privileged, and, therefore, was not actionable as a matter of law." *Rutherfoord,* 417 Pa.Super. at 330, 612 A.2d at 507 (footnote omitted).

*Keypunch, Inc.*, 424 Pa.Super. 230, 234, 622 A.2d 355, 357 (1993). *See Pennsylvania Public Utility Com. v. Zanella Transit, Inc.*, 53 Pa.Commw. 359, 417 A.2d 860 (1980) (general conclusions of law violate the requirement of Rule 1019(a) mandating the pleading of material facts).

In her complaint, Dr. Miketic alleges that Drs. Gabriele and Baron made/disseminated the statements "knowing them to be untrue and/or in reckless disregard of the truth," that the letter was disseminated "for an improper purpose," and that the dissemination was done "willfully and maliciously." There is no underlying factual bases for the states of mind Dr. Miketic ascribes to the defendants.[6] The trial court, therefore, did not err in granting judgment on the pleadings in favor of Drs. Baron and Gabriele. *American Motorists, supra.*

Affirmed.

---

**6.** Additionally, we note that Dr. Miketic alleges in the complaint that she "believes" the defendants published the defamatory statements to "others." The "others" are not named. *See Jaindl v. Mohr*, 432 Pa.Super. 220, 637 A.2d 1353 (1994), *aff'd*, 541 Pa. 163, 661 A.2d 1362 (1995) (a complaint for defamation must identify exactly to whom the allegedly defamatory statements were made).