**Snyder v. The Times News Inc.**

C.P. of Carbon County, no. 96-2350.

*Charles E. Sieger,* for plaintiff.
*David L. Masenheimer,* for defendants.

LAVELLE, *P.J.,* June 9, 1997—Plaintiff, Brian Don Snyder, instituted this defamation suit seeking damages from defendants, The Times News Inc. and Den McLaughlin, defendants, for the publication of an article on November 13, 1996 in the *Times News* that contained the following three statements:

"HEADLINE

"(1) PALMERTON MAN WHO CALLED BOMB THREAT INTO HOSPITAL GETS PROBATION.

"(2) A Palmerton man, who admitted calling in a bomb threat to the Gnaden Huetten Memorial Hospital,

Lehighton, was placed in the Carbon County Rehabilitation Disposition Program on Tuesday for first-time offenders.

"(3) Brian Don Snyder, 42, of 426 Delaware Avenue, admitted calling the hospital on November 27, 1995, saying there was a bomb planted 'with Teresa's name on it' at the facility."

Defendants filed preliminary objections to the complaint in the nature of (1) a demurrer; (2) a motion to strike, or in the alternative, for a more specific pleading; and (3) motion to strike claim for punitive damages. The parties have filed briefs, presented oral arguments, and the objections are now ripe for disposition.

## DISCUSSION

Defendants' demurrer first raises the issue whether the statements contained in the newspaper article were capable of a defamatory meaning.

We begin by reiterating what we said in *Honorable J. T. McDermott v. D. R. Biddle,* 9 Carbon L.J. 320 (1985).

"In assessing the defendants' demurrer, we cannot take a skeptical view of the allegations in the complaint. Rather, we must accept as true all well-pled material facts and every inference fairly deducible therefrom. In order to sustain the demurrer, it is essential that the plaintiff's complaint indicate on its face that his claim cannot be sustained, and the law will not permit recovery. If there is any doubt, this should be resolved in favor of overruling the demurrer. *Donnelly v. De-Bourke,* 280 Pa. Super. 486, 421 A.2d 826 (1980). *Eck-*

*rich v. DiNardo,* 283 Pa. Super. 84, 423 A.2d 727 (1980)." *Id.* at 325.

It is the province of the court to initially determine whether the challenged publication is capable of defamatory meaning. *Corabi v. Curtis Publishing Co.,* 441 Pa. 432, 273 A.2d 899 (1971); see also, *Kryeski v. Schott Glass Technologies,* 426 Pa. Super. 105, 626 A.2d 595 (1993); and *Livingston v. Murray,* 417 Pa. Super. 202, 612 A.2d 443 (1992). The legal principles concerning a court's determination as to whether a publication is capable of defamatory meaning are well established:

"In order for a statement to be considered libelous or slanderous, the trial court must, in the first instance, make a determination as to whether the communication complained of can be construed to have the defamatory meaning ascribed to it by the complaining party. . . . In reaching this conclusion, the court must view the statements in context, . . . and determine whether the statement was maliciously written or published and tended 'to blacken a person's reputation or to expose him to public hatred, contempt, or ridicule, or to injure him in his business or profession.' . . . The test to be applied in evaluating any statement is 'the effect the article is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate.' . . . A critical factor in determining whether a communication is capable of defamatory meaning then is the nature of the audience hearing the remarks." *Baker v. Lafayette College,* 516 Pa. 291, 297, 532 A.2d 399, 402 (1987). (citations omitted)

Defendants contend that the headline statement that Snyder "gets probation" is not capable of a defamatory meaning. We agree.

Since we must consider the statement in context, we look to the body of the article for the details. The first sentence explains that Snyder was placed in the ARD program for first offenders and then proceeds to tell the reader exactly what the ARD program is all about, including the fact that it is a "probationary period." Snyder admits in his complaint that the judge placed him in the ARD program.

We believe that both ARD and a probationary sentence carry with them, in the minds of the average reader, a sense that, although defendant has been charged with a crime and is appearing before the court for a disposition of the criminal charge, his or her conduct did not warrant a jail sentence. Further, a person's reputation is no more diminished by a report of probation than by a report that he or she has been placed in the ARD program.

To the ordinary *Times News* reader, ARD and probation carry the same meaning and are practically synonymous terms. Lay readers do not make the fine distinctions, as lawyers might and as Snyder contends, that probation carries with it admitting the crime and the stigma of a criminal record, and ARD does not necessarily involve such an admission or stigma. Viewed in context and considering the fact that defendants are reporting on a man charged with crimes and admittedly sentenced to ARD in a judicial proceeding, we find that defendants' report of Snyder receiving a probationary sentence is not capable of a defamatory meaning and, therefore, not actionable.

The other statements in the article about Snyder making bomb threats, however, cannot be dismissed as incapable of a defamatory meaning.

The headline "Palmerton man who called in a bomb threat to the hospital" imputes to Snyder (who is identified in the article as "the Palmerton man"), at best,

a terroristic act, and, at worst, the crime of calling in false alarms to agencies of public safety, a misdemeanor of the first degree under the Pennsylvania Crimes Code. In further stating that Snyder "admitted" calling in the bomb threat, the article infers that he confessed in open court to committing the crime. These statements are capable of conveying to the average reader of the *Times News* impressions of Snyder that would tend to harm his reputation, lower him in the estimation of the community, and deter third parties from associating with him.

Defendants offer no analysis in their brief of their claim that the foregoing statements are incapable of defamatory meaning.

Defendants next assert in their demurrer a qualified privilege to make the report about Snyder's appearance before the court and contend that alleged false or incorrect statements in the article do not constitute an abuse of their privilege.

Defendants' argument is both procedurally and legally premature. Qualified privilege is one of the legal defenses media defendants can mount in defamation actions. Procedurally, it must be raised by answer to the complaint and not in a speaking demurrer as defendants attempt here. Once the issue of conditional privilege is raised by a defendant, a private figure defamation plaintiff, seeking compensation for harm inflicted as a result of publication of defamatory matter, must allege and prove that the defamatory matter was published with "want of reasonable care and diligence to ascertain the truth" or, in the vernacular, with negligence. *Rutt v. Bethlehems' Globe Publishing Co.,* 335 Pa. Super. 163, 186, 484 A.2d 72, 83 (1984). A public figure defamation plaintiff must allege and prove that the article was published, with actual malice, that is that the de-

fendants knew the statements were false or recklessly disregarded the truth. *Reiter v. Manna,* 436 Pa. Super. 192, 647 A.2d 562 (1994). It would appear from the complaint that Snyder is a private figure, but we cannot make any finding on that issue until the record is more fully developed. Such a finding is critical to determining whether the plaintiff must establish mere negligence or actual malice in making out a cause of action.

We shall, therefore, overrule the demurrer.

### I. *Motion To Strike*

Defendants' motion to strike contends that the amended complaint does not set forth any factual basis for the allegations of malicious intent, gross negligence, or actual malice. We disagree.

In paragraph 8, Snyder alleges that the false statements about Snyder were known to be false when made and "were made with actual malice and intent" to injure Snyder's reputation. These allegations coupled with the negligence averments in paragraphs 5, 6 and 9 are sufficiently specific to put defendants on notice of what Snyder intends to prove at trial in order to meet his burden of proving either negligence or actual malice.

We do not find apposite *Miketic v. Baron,* 450 Pa. Super. 91, 675 A.2d 324 (1996) because the instant complaint does contain adequate factual support for the general averments of actual malice and negligence.

### II. *Motion To Strike Claim for Punitive Damages*

Defendants' motion to strike for punitive damages argues that there is no factual basis for awarding punitive damages set forth in the complaint. This contention is without merit.

In order for a private individual to obtain punitive damages from a publisher for a libel that involves a matter of public concern, a plaintiff must show actual malice, that is, knowledge of falsity or reckless disregard for the truth. *Dun & Bradstreet v. Green Moss Builders Inc.*, 472 U.S. 749, 751, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985). More specifically, the plaintiff must allege and prove with clear and convincing evidence that the defendants realized that their statements were false or that they subjectively entertained serious doubt as to the truth of their statements. *Bose Corp. v. Consumers Union of United States Inc.*, 466 U.S. 485, 511 n.30, 104 S.Ct. 1949, 1965 n.30, 80 L.Ed.2d 502, 524 n.30 (1985).

Paragraph 8 of the amended complaint alleges that the false statements about Snyder were known to be false when made and "were made with actual malice and intent" to injure Snyder's reputation. These allegations, if proven, are sufficient to support an award of punitive damages.

For the foregoing reasons, we enter the following

## ORDER

And now, June 9, 1997, upon consideration of the defendants' preliminary objections, it is hereby ordered and decreed as follows:

(1) Defendants' demurrer is overruled.

(2) Defendants' motion to strike is overruled.

(3) Defendants' motion to strike the claim for punitive damages is denied.

Defendants shall have 20 days from the date of receipt of this order to file an answer to the amended complaint.