Lionel JONES and Teresa Schuler–Jones, Appellants,

v.

Dr. Steven SNYDER and Hospital of the Philadelphia College of Osteopathic Medicine, Appellees.

Superior Court of Pennsylvania.

Argued May 19, 1998.
Filed July 1, 1998.

Rhonda H. Wilson, Philadelphia, for appellants.

Kathleen M. Kramer, Philadelphia, for appellees.

Before HUDOCK and STEVENS, JJ., and CIRILLO, President Judge Emeritus.

CIRILLO, President Judge Emeritus:

Dr. Lionel Jones and Teresa Shuler–Jones (the Joneses) appeal the order entered in the Court of Common Pleas of Philadelphia County granting summary judgment in favor of Appellee, Philadelphia College of Osteopathic Medicine ("PCOM").[1] We affirm.

On March 9, 1991, Avatar Jones (baby Avatar), son of the Joneses, was born premature[2] at Appellee–Hospital, PCOM; he remained in PCOM's neonatal unit until his release. The baby's scheduled release date from PCOM was April 1, 1991. The Joneses became increasingly unhappy with the care that was administered to their baby,[3] however, and voluntarily removed him from PCOM on the evening of March 31, 1991; the Joneses refused to provide PCOM staff with baby Avatar's subsequent treating physician's name, address or telephone number.[4] At the time he was released, baby Avatar had not been evaluated for sleep apnea (a common test conducted prior to discharging a premature infant) and had been diagnosed with an elevated bilirubin level[5] by a neonatal physician that same day.

Regina A. Stanton, R.N., a registered nurse employed at PCOM, contacted the Child Protective Services Hotline and reported her concern for the health of baby Avatar upon his removal from PCOM; the hotline advised her to contact the local county child protective services. Nurse Stanton reported that the Joneses had removed baby Avatar from the hospital without the hospital's consent and that she was concerned whether baby Avatar was receiving proper/any medi-

---

1. On May 9, 1995, the trial court granted summary judgment in favor of Defendant, Dr. Steven Snyder. Accordingly, the order from which appellant appeals, granting summary judgment in favor of the remaining defendants, is final because it disposes of all claims and all parties. *See* Pa.R.A.P. 341(b) (final orders).

2. At his birth, baby Avatar had a gestational age of approximately 31–32 weeks.

3. In fact, it has been documented that the Joneses were constantly involved in the medical care provided to their infant by PCOM medical staff. Mrs. Jones often asked to observe the medical procedures conducted on baby Avatar and on occasion would object to the particular caregiver assigned to baby Avatar.

4. Prior to terminating baby Avatar's medical care at PCOM, the hospital required the Joneses to sign a document that released PCOM, its trustees, officers, employees and agents from any responsibility or liability for any injuries or damages that might result from the baby's premature discharge.

5. Bilirubin is the orange-colored or yellowish pigment contained in bile, a substance secreted by the liver. Bilirubin is normally present in the blood in small amounts. However, in certain circumstances, the amount is increased where excessive destruction of the red blood cells has occurred or when there is interference with bile excretion. **Taber's Cyclopedic Medical Dictionary**, B–21 (10th ed.1965).

cal care. Nurse Stanton's concern was heightened by the fact that Mrs. Jones would not offer any information regarding the baby's future medical care once released from PCOM (i.e., pediatrician's name, address, telephone number and when and if the baby would be taken to a pediatrician). Finally, Nurse Stanton testified that she told the child services' representative that while the child was not in immediate danger, she thought someone should contact the Joneses to make sure that the baby was receiving proper medical care.

■ Just after midnight on April 1, 1991, Mrs. Jones received a phone call from a Montgomery County Department of Human Services' (MCDHS) representative who, according to Mrs. Jones, informed her that she and her husband had been reported by a PCOM staff member to the county child abuse center, that her baby's life was in danger, and that there was concern that the baby needed a breathing machine and a heart monitor. Subsequently, the Joneses filed the underlying civil action sounding in defamation[6] against Appellees, PCOM and Dr. Steven Snyder, an attending neonatologist in PCOM's neonatal unit who provided primary medical care to baby Avatar. In their complaint, the Joneses alleged that either a representative of PCOM or Dr. Snyder communicated or approved the report made to MCDHS and that said report was made with the intent of being false, malicious and defamatory. Such defamatory statements, the Joneses asserted, had injured and would continue to greatly injure their good names and reputation and would subject them to public contempt, ridicule, and shame, especially in their professional lives (dentistry and pharmacy). In their answer and new matter, the defendants asserted that they were statutorily immune from any liability for statements made to child services regarding baby Avatar.

The matter was heard before a board of arbitrators and the Joneses were awarded $50,000.00. The Joneses appealed the arbitrator's award to the Court of Common Pleas of Philadelphia County. Prior to trial, the court granted PCOM's motion for summary judgment. The Joneses appeal and present the following issues for our consideration:

(1) Did the trial court err in granting Appellee's motion for summary judgment when there existed genuine issues of material fact?

(2) Did the trial court err in granting immunity to Appellee under the Child Protective Services Act?

Our standard of review in cases of summary judgment is well settled. This court will only reverse the trial court's entry of summary judgment where there was an abuse of discretion or an error of law. *Merriweather v. Philadelphia Newspapers, Inc.*, 453 Pa.Super. 464, 470, 684 A.2d 137, 140 (1996). Summary judgment is proper when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035.2, 42 Pa.C.S.A. In determining whether to grant summary judgment a trial court must resolve all doubts against the moving party and examine the record in the light most favorable to the non-moving party. *Id.* Summary judgment may only be granted in cases where it is clear and free from doubt the moving party is entitled to judgment as a matter of law. *Id.*

The Joneses assert summary judgment was improper because there existed a genuine issue of material fact regarding whether the Appellees acted in bad faith in making a report to the county child abuse center. In addition they claim that because the report was not made in good faith, Appellees should not be shielded from liability under section 6311(b) of the Child Protective Services Law.

The purpose of the Child Protective Services Law ("CPSL"), 23 Pa.C.S.A. § 6301 *et*

---

6. In an action for defamation, a plaintiff must prove: (1) the defamatory character of the communication; (2) publication by the defendant; (3) its application to the plaintiff; (4) understanding by the recipient of its defamatory meaning; (5) understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm to the plaintiff; and (7) abuse of a conditionally privileged occasion. *Miketic v. Baron*, 450 Pa.Super. 91, 97, 675 A.2d 324, 327 (1996) (citations omitted).

*seq.,* "is to bring about quick and effective reporting of suspected child abuse so as to serve as a means for providing protective services competently and to prevent further abuse of the children while providing rehabilitative services for them and the parents." *Heinrich v. Conemaugh Valley Memorial Hospital,* 436 Pa.Super. 465, 474, 648 A.2d 53, 57 (1994), *citing In Interest of J.R.W.,* 428 Pa.Super. 597, 602, 631 A.2d 1019, 1021 (1993). *See also Commonwealth v. Arnold,* 356 Pa.Super. 343, 514 A.2d 890 (goal of the CPSL is to protect child and other family members from further abuse, and to open family dynamics to effective treatment). The CPSL was "created primarily for reporting suspected child abuse, providing the means for doing so and establishing the persons responsible for reporting the abuse under subchapter (b) [of section 6311]." *In Interest of J.R.W.,* 428 Pa.Super. at 602–03, 631 A.2d at 1022.

■ Pursuant to section 6311 of the CPSL:

(a) General rule.—Persons, who in the course of their employment, occupation, or practice of their profession, come into contact with children shall report or cause a report to be made in accordance with section 6313 (relating to reporting procedure) when they have reason to believe, on the basis of their medical, professional, or other training and experience, that a child coming before them in their professional or official capacity is an abused child. The privileged communication between any professional person required to report and the patient or client of that person shall not apply to situations involving child abuse and shall not constitute grounds for failure to report as required by this chapter.

**(b) Enumeration of persons required to report.** – *Persons required to report under subsection (a) include,* but are not limited to, *any licensed physician,* osteopath, medical examiner, coroner, funeral director, dentist, optometrist, chiropractor, podiatrist, intern, *registered nurse,* licensed practical nurse, hospital personnel engaged in the admission, examination, care or treatment of persons, a Christian

Science practitioner, school administrator, school teacher, school nurse, social services worker, day-care center worker or any other child-care or foster-care worker, mental health professional, peace officer or law enforcement official.

23 Pa.C.S.A. § 6311 (emphasis added). A person who has made a required report of abuse under section 6311 is presumed to have acted in good faith. 23 Pa.C.S.A. § 6318(b). Additionally, section 6318 of the CPSL provides immunity from civil and criminal liability for those persons who, pursuant to section 6311(b), have made a good faith report of suspected child abuse. 23 Pa.C.S.A. § 6318(a). Whether a person has acted in good faith by reporting potential abuse under the CPSL must be judged against an objective standard rather than by alleged motives or allegations of maliciousness. *Heinrich,* 436 Pa.Super. at 476, 648 A.2d at 58.

In *Heinrich,* plaintiff, a mother of a minor admitted to the defendant-hospital, filed a four-count complaint alleging defamation, corporate negligence, intentional infliction of emotional distress and negligent infliction of emotional distress against the hospital and its agents. *Id.* at 472, 648 A.2d at 56. An employee of the hospital had contacted a county representative of children and youth services in order to report that Mother was suspected of possible child abuse. *Id.* at 468, 648 A.2d at 54. After the trial court granted preliminary objections in defendants' favor, Mother appealed to the superior court arguing that a question of fact existed for the jury as to whether the defendants acted in good faith by reporting her suspected abuse. *Id.* at 473, 648 A.2d at 57.

On appeal, our court affirmed the dismissal of Mother's complaint finding that "[a] review of Appellants' second amended complaint reveals that it contains general language with regard to the motives of the individual Appellees and allegations of maliciousness. Such allegations are insufficient to overcome the statutory presumption [of good faith under 23 Pa.C.S.A. § 6311(b) ]." *Id.* at 476, 648 A.2d at 58 (citation omitted). Specifically, the court found fault with the fact that Mother had been granted leave, on

two occasions, to amend her defamation claim so that she could "assert sufficient specific facts tending to show that the defendants acted in bad faith." *Id.* at 475–76, 648 A.2d at 58. When Mother's complaint did not remedy this defect in pleading, her case under the CPSL was dismissed.

■ In the instant case we must examine the parties' pleadings, depositions, answers to interrogatories, admissions on file, and affidavits in order to determine whether the Joneses have successfully demonstrated that a genuine issue of material fact exists with regard to Appellees' alleged bad faith reporting. Pa.R.C.P. 1035.2. Similar to the plaintiff in *Heinrich*, the Joneses' complaint contains general allegations of bad faith on the part of PCOM and/or Dr. Snyder in reporting the alleged abuse of baby Avatar. Specifically, the complaint alleges that the defendants published statements regarding the improper removal of baby Avatar from PCOM "to the Montgomery County Human Services and its employees knowing the statements to be false, malicious, and defamatory." Furthermore, the complaint states that the defendants "should have known that such publication concerning the Plaintiff[s] would have serious effects upon their reputations that such publication would be repeated and republished by persons who heard or read it; and that gossip, reports, and rumors affecting the reputation of the Plaintiffs would result naturally and proximately from such publication."

Objectively, these allegations do not create a genuine issue as to whether defendants acted with bad faith in reporting their concern for baby Avatar. Furthermore, the record contains no direct or circumstantial evidence showing that the defendants acted with malice. *See Miketic v. Baron*, 450 Pa.Super. 91, 675 A.2d 324 (1996) (no underlying factual bases existed for plaintiff's claim that defendants disseminated untrue statements "willfully and maliciously"; there was no substantiation to defamation count in complaint regarding the alleged states of mind of defendants). Nurse Stanton contacted the child services' hotline when, in her opinion, she felt that she had the duty to find out what recourse she should take with regard to

having baby Avatar's health treatments monitored after he was removed from PCOM without the approval of hospital staff. In fact, the record contains a detailed policy published by PCOM and disseminated to its employees regarding reporting child abuse. In this document, a PCOM staff member is required to report child abuse which consists of "serious physical neglect."

Accordingly, it was well within the defendants' duty to report to child services any concerns regarding the future medical care for premature baby Avatar; such concerns were heightened by the fact that the baby was released from PCOM with elevated bilirubin levels and before he could be tested for sleep apnea. Finally, the urgency of this report was precipitated by the fact that the Joneses were extremely uncooperative in providing Nurse Stanton with information concerning baby Avatar's follow-up medical treatment and monitoring subsequent to his release from PCOM. Nurse Stanton's actions, therefore, were in furtherance of the important objective intended under the CPSL—the quick and effective reporting of suspected child abuse in order to provide competent protection and to prevent further child abuse. *Heinrich, supra*; *In Interest of J.R.W., supra*. In fact, had Nurse Stanton not reported her concern for baby Avatar's medical treatment, the express purpose of the CPSL may well have been compromised. *See Fewell v. Besner*, 444 Pa.Super. 559, 664 A.2d 577 (doctor properly reported incident of alleged child abuse to coroner in good faith and was, therefore, immune under the CPSL). Therefore, there is no genuine issue of defendants' bad faith; the appellants have failed to proffer any evidence in support of overcoming the statutory presumption of good faith under the CPSL. *Heinrich, supra*. *See Brozovich v. Circle C Group Homes, Inc.*, 120 Pa. Commw. 417, 548 A.2d 698 (1988) (judgment on pleadings properly granted in defendants' favor where no factual issue existed with regard to defendants' bad faith in reporting suspected child abuse; pleadings only made general allegations of bad faith conspiracy among defendants).

With regard to the Joneses' final issue on appeal, there is no dispute that Appellees are

subject to the immunity provision under the CPSL; as physicians and registered nurses they were required to make good faith reports of child abuse. *See* 23 Pa.C.S.A. § 6311(b); *see also Heinrich, supra* (hospitals are required to report suspected child abuse under section 6311(b) of the CPSL). Having already determined that defendants acted in good faith in making a required report, they are entitled to statutory immunity under the CPSL. 23 Pa.C.S.A. § 6318(a). Because the Joneses have failed to present a genuine issue of fact, the trial court properly granted summary judgment in favor of the defendants. *Merriweather*, supra.

Order affirmed.