J-A22033-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| CINDY GALLAGHER, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ARCHDIOCESE OF PHILADELPHIA, | |
| Appellant | No. 632 EDA 2017 |

Appeal from the Judgment Entered February 10, 2017
in the Court of Common Pleas of Philadelphia County
Civil Division at No.: March Term, 2015 No. 01835

BEFORE: BOWES, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:               **FILED NOVEMBER 13, 2017**

Appellant, the Archdiocese of Philadelphia, appeals from the final judgment entered February 10, 2017. Specifically, it argues that the evidence was insufficient to support the jury's verdict, in favor of Appellee, Cindy Gallagher, on the sole count of defamation, and that the trial court erred in not granting a directed verdict on the basis of conditional privilege. We affirm.

We take the factual and procedural history in this matter from the trial court's April 11, 2017 opinion and our review of the certified record. From September 26 through September 30, 2016, this case was tried before a jury. At trial, Appellee testified that she was employed as a full-time teacher at St. Philip Neri School, part of the Archdiocese of Philadelphia, from 2007 through

_____

[*] Retired Senior Judge assigned to the Superior Court.

2014. During the 2013-2014 school year, she was one of two sixth-grade homeroom teachers and, as such, was responsible for preparing students for the TerraNova standardized tests. (*See* N.T. Trial, 9/27/16, at 17, 24).

Principal Elizabeth Veneziale testified that on March 18, 2014, she became aware of two practice TerraNova tests (for math and English language arts) that contained questions similar to those on the actual test. (*See id.* at 127-28). Veneziale reviewed the practice tests and noticed the similarities. She then called Theresa Garvin, the Director of Assessment and Special Projects of Appellant's Office of Catholic Education, to ask what she should do next. (*See id.* at 128-29). After speaking with Garvin, Veneziale walked into Appellee's classroom, while Appellee was teaching, and asked her if the practice tests were hers and if she had handed them out to the students. Appellee replied that they were. (*See id.* at 25-27). Appellee testified that, during this exchange, "the kids were staring at me and she was yelling at me" and that after Veneziale left she "tried to get the kids back on track, but [she] was just yelled at in front of [her] students by [her] principal." (*Id.* at 28).

The next morning Veneziale held a mandatory meeting with the homeroom teachers who administer the TerraNova exam. Appellee testified that at the meeting Veneziale said that there had been a "terrible cheating scandal that has happened with the sixth grade teachers," which was very serious, and that both the Archdiocese and Monsignor Charles Vance, the head of St. Philip Neri School, had been notified. (*Id.* at 32). Appellee explained

that she and Pat Kaiser were the only sixth grade teachers who administered the exam. (*See id.* at 33, 35).

On March 24, 2014, Veneziale and Garvin conducted a mandatory meeting of all the teaching faculty. (*See id.* at 37). Garvin explained that she was called there because of a serious cheating scandal that happened at the school. Appellee stated that Garvin "told us, the whole room, that the [sixth] grade teachers had cheated and that they . . . could have brought down the school . . . what they did was irreparable . . . and there was no business for teachers like the cheaters to be teaching [] children." (*Id.* at 38). Appellee further testified that Garvin said that the teachers who cheated could be fired, lose licenses, and could be charged as criminals. (*See id.* at 39). Appellee explained that there was no doubt that Garvin was talking about her and Kaiser, and that all of the other teachers in the room were looking at them. (*See id.*).

Garvin and Veneziale proceeded to conduct an investigation into the alleged cheating, where they reviewed the conduct of the teachers and concluded that, with respect to the math practice test, test questions on each were nearly verbatim, specifically that the practice test "mimicked the TerraNova," and that Appellee had cheated. (N.T. Trial, 9/26/16, at 137; *see id.* at 130; N.T. Trial, 9/27/16, at 137-38). Veneziale, Garvin, and the Office of Catholic Education decided to invalidate the test. (*See* N.T. Trial, 9/27/16, at 138).

On May 19, 2014, Veneziale mailed a letter to sixth grade parents explaining that the integrity of the tests was compromised and the tests were invalidated because "the students received study guides with questions from the actual battery prior to testing." (Letter, 5/19/14; *see* N.T. Trial, 9/27/16, at 44). Appellee testified that after the letter was mailed, she received phone calls from friends and concerned parents. (*See* N.T. Trial, 9/27/16, at 44). In June of that year, Monsignor Vance informed Appellee that she would not be offered a contract to teach at the school for the following year. (*See id.* at 50).

At the conclusion of Appellee's case in chief, Appellant moved for nonsuit based on agency and the ministerial exception of the defamation act, moved to strike the claim for punitive damages, and asked the court to find conditional privilege, and instruct the jury accordingly. (*See* N.T. Trial, 9/28/16, at 60-64). The court denied nonsuit with respect to agency, the ministerial exception, and conditional privilege, and granted nonsuit with respect to punitive damages. (*See id.* at 70; N.T. Trial, 9/29/16, at 4). The court later explained that when it denied the motion for nonsuit because of conditional privilege, it did so because it believed that Appellee had shown abuse of the privilege. (*See* N.T. Trial, 9/30/16, at 24). At the close of evidence, Appellant moved for a directed verdict arguing that Appellee had not met her burden of proving defamation, which the court denied. (*See id.* at 29-33). The jury returned a verdict in favor of Appellee and against Appellant.

On October 11, 2016, Appellant moved for post-trial relief seeking a judgment notwithstanding the verdict (JNOV), a new trial, a new trial on damages, and/or remittitur. On October 21, 2016, Appellee filed a cross-motion for post-trial relief in regard to punitive damages. The court denied both motions and judgment was entered on February 10, 2017. Appellant timely appealed.[1]

Appellant raises two issues for our review:

1. Did [Appellee] fail to prove a *prima facie* case of defamation for any communication she alleged was defamatory, and, further, was every allegedly defamatory statement conditionally privileged?

2. Was [Appellant] entitled to a compulsory nonsuit or directed verdict on the basis of conditional privilege, and, alternatively, did the trial court abuse its discretion in *sua sponte* directing a verdict for [Appellee] on the question of abuse of privilege?

(Appellant's Brief, at 2-3).

Appellant challenges the trial court's denial of its motion for judgment notwithstanding the verdict (JNOV), for which our standard of review is well settled.

A JNOV can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or, (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant. When reviewing a trial court's denial of a motion for JNOV, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. In so doing, we must also view this evidence in the light most favorable to the

---

[1] The court did not order Appellant to file a concise statement of errors complained of on appeal. It entered an opinion on April 11, 2017. **See** Pa.R.A.P. 1925.

verdict winner, giving the victorious party the benefit of every reasonable inference arising from the evidence and rejecting all unfavorable testimony and inference. Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact. If any basis exists upon which the [court] could have properly made its award, then we must affirm the trial court's denial of the motion for JNOV. A JNOV should be entered only in a clear case.

*V-Tech Servs., Inc. v. Street*, 72 A.3d 270, 275 (Pa. Super. 2013) (citation omitted).

Appellant claims that the trial court erred in denying its motion for judgment notwithstanding the verdict because Appellee failed to establish a *prima facie* case of defamation. Further, it contends that even if Appellee met her initial burden, she failed to prove that the statements in question were not conditionally privileged. (*See* Appellant's Brief, at 20-41). We disagree.

In an action for defamation, the plaintiff must prove: (1) the defamatory character of the communication; (2) publication by the defendant; (3) its application to the plaintiff; (4) understanding by the recipient of its defamatory meaning; (5) understanding by the recipient of it as intended to be applied to plaintiff; (6) special harm to the plaintiff; (7) abuse of a conditionally privileged occasion. . . .

*Krajewski v. Gusoff*, 53 A.3d 793, 802 (Pa. Super. 2012), *appeal dismissed*, 84 a3d 1057 (Pa. 2014) (citation omitted); *see* 42 Pa.C.S.A. § 8343(a).

A communication is defamatory if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from association or dealing with him. A communication is also defamatory if it ascribes to another conduct, character or a condition that would adversely affect his fitness for the proper conduct of his proper business, trade or profession.

*Davis v. Resources for Human Development, Inc.*, 770 A.2d 353, 357 (Pa. Super. 2001) (citations omitted).

Here, Appellee provided evidence with respect to three defamatory communications: (1) oral statements from Veneziale to teachers during the March 19, 2014 meeting; (2) oral statements from Garvin to teachers at the March 24, 2014 training session; and (3) the May 19, 2014 letter to parents. (*See* Trial Ct. Op., at 22). The trial court concluded that:

> [f]or each communication, Appellee offered sufficient evidence of its publication, its application to Appellee, and that the recipients understood the communication as defamatory and applicable to her.
>
> Appellee testified that Veneziale, in a mandatory meeting of all homeroom teachers administering the TerraNova exam, told the attendees that there was a "terrible cheating scandal" involving the sixth-grade teachers. (N.T. Trial, 9/27/16, at 2; *see id.* at 30-32). . . .
>
> During Garvin's presentation to all teachers, Appellee testified that Garvin similarly told the attendees that there was a "serious cheating scandal," the sixth-grade teachers had cheated, their actions were irreparable, and proceeded to discuss the consequences of cheating in standardized tests. (*Id.* at 38; *see id.* at 36-39). . . .
>
> It was not unreasonable for the jury to conclude that the communication applied to Appellee and was understood to be as such. The jury heard that the attendees at both meetings associated the statements as referring to Appellee because everyone was staring at her. (*See* N.T. Trial, 9/27/16, at 35, 39, 88). In Garvin's presentation, she explicitly said that sixth-grade exams had been invalidated. . . . Appellee, as one of two sixth-grade homeroom teachers, was subject to the statements. Furthermore, during the testimony of former school principal Bernice Annechini ("Annechini"), the jury heard that former faculty told Annechini about the cheating scandal and that Annechini understood that the incident involved Appellee. (*See* N.T. Trial, 9/28/16, at 10-11).

Also, it was established that explanatory letters were sent to sixth-grade parents. (*See* Letter, 5/19/14). It was clear that the letter applied to Appellee as she was the affected students' teacher. Appellee presented evidence that the sixth-grade parents read the letter and subsequently contacted both Appellee and the school about its meaning and effects. (*See* N.T. Trial, 9/27/16, at 44).

Considering the context in which the statements were made and [their] overall effect, the hearer or reader of the communication could have interpreted that Appellee engaged in unethical teaching practices. It could have led the hearer to believe that Appellee was unfit as a teacher. These were within reasonable implications of such remarks, especially in light of the teachers' reactions . . . . These implications demonstrate that the statements were understood as defamatory within the category of slander *per se*.

Given the nature of the statements, Appellee presented Annechini's testimony to support a showing of its detrimental effects. (*See* N.T. Trial, 9/28/16, at 11). Annechini testified that hearing about the incident caused her to question her previous opinion of Appellee and that she decided to stay away from Appellee. (*See id.* at 11, 16). Moreover, Monsignor Vance testified that he believed Appellee was a cheater after he was informed about the incident. (*See* N.T. Trial, 9/27/16, at 166-67). Lastly, Appellee declared that her relationships with students, parents, teachers, and parishioners deteriorated. (*See id.* at 57).

There was sufficient evidence to sustain the verdict of liability against Appellant on this defamation claim. It was within the province of the jury to weigh the evidence, determine the veracity and credibility of the witnesses, and render its verdict accordingly. The verdict was not against the weight of the evidence such that reasonable persons could not have disagreed as to the result. This court will not disturb the jury's finding.

(Trial Ct. Op., 22-25) (case citation and one record citation omitted; record

citation formatting provided).

Upon review, we conclude that there was sufficient competent evidence

to sustain the jury's verdict. Appellee offered evidence that Veneziale and

Garvin made defamatory statements, which applied to Appellee, during the March 19, and March 24, 2014 meetings with teaching faculty. In addition, Appellee offered evidence of a letter sent to her students' parents concerning cheating on the TerraNova. It was clear that the letter was defamatory and that it applied to Appellee. Appellee offered proof of harm, testifying that she suffered as a result of these statements, both in the form of mental anguish and damage to her reputation. Finally, Appellee testified that the statements were made negligently, in that an investigation had not been completed prior to accusing her of cheating, and that the defamatory language in the letter to parents was unnecessary. Given this evidence, it was reasonable for the jury to conclude that Appellee met her burden to prove a *prima facie* case of defamation. **See Krajewski**, **supra** at 802; **Davis**, **supra** at 357. Therefore, we conclude that the trial court did not err in denying Appellant's motion for JNOV. **See V-Tech Servs., Inc.**, **supra** at 275. The first part of Appellant's first issue does not merit relief.

In the second part of its first issue, Appellant contends that even if Appellee met her burden of establishing the elements for defamation, it was entitled to JNOV because the allegedly defamatory statements were conditionally privileged. (**See** Appellant's Brief, at 30-41). We disagree.

This court has held that the defense of conditional privilege may apply to certain defamatory statements where the communications were made on a proper occasion, with proper motive, in a proper manner and based on reasonable cause. **See Miketic v. Baron**, 675 A.2d 324, 329 (Pa. Super.

1996). "[P]roper occasions giving rise to a conditional privilege exist when (1) some interest of the person who publishes defamatory matter is involved; (2) some interest of the person to whom the matter is published or some other third person is involved; or (3) a recognized interest of the public is involved." *Id.* (citations omitted). After a defendant proves that a matter is conditionally privileged, the burden shifts to the plaintiff who must prove that such conditional privilege was abused.

> Abuse of a conditional privilege is indicated when the publication is actuated by malice or negligence, is made for a purpose other than that for which the privilege is given, or to a person not reasonably believed to be necessary for the accomplishment of the purpose of the privilege, or includes defamatory matter not reasonably believed to be necessary for the accomplishment of the purpose.

*Id.* (citations omitted).

Here, the trial court held that:

> Appellee entered sufficient evidence to sustain the jury's finding of negligence for abuse of privilege. The jury heard evidence that Appellant exposed and blamed Appellee with cheating on the TerraNova exam to other faculty members and parents without adequate investigation as to the truth of the statement. Garvin specifically testified that the investigation was incomplete by the time she made her presentation. There was evidence that other teachers prepped the students in the same way as Appellee, (*see* N.T. Trial, 9/26/16, at 96-97, 118-19; N.T. Trial, 9/27/16, at 33-34), because Appellant recommended modeling the practice questions in the same format and disseminated this method of prepping students to the teachers. Lastly, the jury heard that the parent letter could have been worded in a way to lessen damage to Appellee's reputation. Based on the evidence, the jury reasonably could have found that Appellant did not exercise reasonable care in investigating the truth of the statements prior to its publication and that Appellant's

publication of the statements included defamatory matter not reasonably believed to be necessary to accomplish its purpose.

(Trial Ct. Op., at 14-15) (record citation formatting provided; parenthetical quotation omitted).

Upon review, we agree with the trial court that, viewing the evidence in the light most favorable to Appellee, she met her burden of proving that Appellant abused its conditional privilege where it had failed to adequately investigate the truth of the defamatory statements before publishing them and included defamatory statements in the letter to parents that were unnecessary. *See Miketic*, *supra* at 329; (Trial Ct. Op., at 15). Therefore, we conclude that the trial court did not err because the evidence was such that no two reasonable minds could disagree that Appellee proved all of the elements of defamation and that Appellant abused its conditional privilege. *See V-Tech Servs., Inc.*, *supra* at 275; *see also Krajewski*, *supra* at 802; *Davis*, *supra* at 357. Appellant's first issue does not merit relief.

In its second issue, Appellant claims that the court erred when it "*sua sponte* directed a verdict for [Appellee] on the question of abuse of privilege." (Appellant's Brief, at 42 (unnecessary capitalization omitted); *see id.* at 42-57). Specifically, it argues that the court erred when it decided as a matter of law that Appellee met her burden, and therefore did not instruct the jury or include a question on the verdict sheet concerning abuse of privilege. (*See id.* at 45). Appellant failed to raise its argument before the trial court, therefore it is waived.

> . . . [I]n order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error, such as an erroneous jury instruction, will result in waiver of that issue. On appeal, the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected. . . . By specifically objecting to any obvious error, the trial court can quickly and easily correct the problem and prevent the need for a new trial. Additionally, the appellate court should not be required to waste judicial resources correcting a problem that the trial court could have easily corrected if it had been given the opportunity to avoid the necessity of granting a new trial.

*Fillmore v. Hill*, 665 A.2d 514, 515–16 (Pa. Super. 1995), *appeal denied*, 674 A.2d 1073 (Pa. 1996) (citations omitted); *see* Pa.R.A.P. 302(a).

Here, in denying Appellant's motion for nonsuit, the trial court explained that it was denying nonsuit on the basis of conditional privilege because Appellee had sufficiently proved abuse of privilege. (*See* N.T. Trial, 9/30/16, at 22-24). Thereafter, Appellant did not object to the trial court's jury instructions, which did not include an instruction on abuse of privilege, or the verdict sheet, which did not include an abuse of privilege question. (*See id.* at 23-24, 114). Because Appellant did not object before the trial court, we conclude that it waived its argument that the failure to include such instruction or verdict sheet question was error. *See Fillmore*, *supra* at 515-16; Pa.R.A.P. 302(a).

Moreover, to the extent that Appellant claims the trial court erred in denying its motion for JNOV because Appellee failed to show abuse of privilege, it would not merit relief. As discussed *supra* at 10-11, the trial

court explained that "[b]ased on the evidence, the jury reasonably could have found that Appellant did not exercise reasonable care in investigating the truth of the statements prior to its publication and that Appellant's publication of the statements included defamatory matter not reasonably believed to be necessary to accomplish its purpose." (Trial Ct. Op., at 15). Upon review, we conclude that the trial court did not err where, viewing the evidence in the light most favorable to Appellee, the evidence was such that no two reasonable minds could disagree that Appellant abused its conditional privilege. *See V-Tech Servs., Inc.*, *supra* at 275; *Miketic*, *supra* at 329. Appellant's second issue would not merit relief.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/13/2017