## Byrd v. Sacco

*Angelo L. Cameron* and *Robert T. Vance Jr.,* for plaintiff.

*Andrew G. Gay,* for defendant.

LACHMAN, *J.,* June 30, 2006—

## BACKGROUND

The plaintiff, Police Sergeant Kimberley Byrd brought this defamation action against her next-door neighbors Eileen Sacco and her husband Edward Sacco as a result of statements made by Eileen Sacco to the Police Advisory Commission and by Edward Sacco to the Police Department Internal Affairs Division. The statements included allegations that the plaintiff was mentally ill, that plaintiff's daughter was the child of the police commissioner, and that the plaintiff had used her position of authority to harass the defendants and their family.

After three days of deliberations the jury returned a verdict against Mrs. Sacco in the amount of $10,000 for compensatory damages and $15,000 for punitive damages. N.T. 5/11/05, p. 13. However, the jury was deadlocked as to the claim against defendant Edward Sacco, and therefore a mistrial was declared as to Mr. Sacco.

On May 23, 2005, Mrs. Sacco filed a timely post-trial motion in which she raised several issues. The second issue was a request for "a new trial because the verdict was against the weight of the evidence in that the plaintiff suffered no harm and that the statement made to Mr. Johnson at the Police Advisory Commission was done under conditionally privileged circumstances." After reviewing the testimony, the court concluded that the plaintiff failed to establish any damages as a result of Mrs. Sacco's statement to the Police Advisory Commission. Although there was testimony that the Internal Affairs Division report would remain in the plaintiff's personnel file and might affect her opportunity for advancement in the Police Department, the statement to IAD was made by Mr. Sacco, not Mrs. Sacco. No evidence was offered to the jury about the effect of Mrs. Sacco's statement to PAC, nor was there any evidence that the plaintiff had been humiliated or even upset by what had transpired.[1]

In the interest of judicial economy and in the absence of evidence of the effect of defendant Eileen Sacco's

---

1. Although inquiry commenced about whether plaintiff "needed" treatment as a result of the alleged defamation, the court sustained the objection to the question as phrased and there were no follow-up questions put to the plaintiff.

statements, the court granted a new trial so that the claims against both defendants could be tried together.[2] This appeal followed.

Upon further review of the post-trial motion and the brief defendant filed in support of that motion, the court has determined that the issue of the plaintiff's failure to establish damages was waived because defendant did not mention or discuss the issue in her post-trial motions brief and did not argue the issue during the hearing on post-trial motions. "In order to preserve an issue for appellate review following a civil verdict, the issue must first be raised in a post-trial motion. . . . Moreover, an issue raised in a post-trial motion is waived unless it is briefed or argued in post-trial proceedings." *Kraus v. Taylor,* 710 A.2d 1142, 1146 (Pa. Super. 1998), *appeal dismissed,* 560 Pa. 220, 743 A.2d 451 (2000). "Failure to set forth an argument in briefs filed in the court in support of post-trial motions constitutes a failure to preserve the issue or issues not argued." *Jackson v. Kassab,* 812 A.2d 1233, 1235 (Pa. Super. 2002), quoting *DiSalle v. P.G. Publishing Co.,* 375 Pa. Super. 510, 546, 544 A.2d 1345, 1364 (1988), defendant abandoned and waived the issue of plaintiff's failure to establish damages by failing to brief and argue that issue.

Plaintiff's failure to establish damages was the only issue in defendant's post-trial motions that this court believed merited relief. Having concluded that issue is waived, the trial court's decision granting a new trial should be reversed for the reasons set forth below.

---

2. Defendant Eileen Sacco's second issue raised in her post-trial motions asked for a new trial and not for judgment n.o.v.

## ISSUES

Mrs. Sacco raised the following additional issues in her post-trial motion:

(1) Should the trial court grant defendant's motion for judgment notwithstanding the verdict (judgment n.o.v.) because there was insufficient evidence to submit the case to the jury?

(2) Should the trial court grant defendant's motion for a new trial because the defendant's statement to the Police Advisory Board was done under conditionally privileged circumstances?

(3) Should the trial court grant defendant's motion for a new trial and/or to arrest judgment because a mistrial was warranted based upon racial remarks made by plaintiff during her testimony at trial?

(4) Should the trial court grant defendant's motion for a new trial because the trial court incorrectly allowed the issue of punitive damages to be presented to the jury?

(5) Should the trial court grant defendant's motion for a new trial or in the alternative, a remittitur because the damages awarded by the jury were shocking to the conscience of the court?

(6) Should the trial court grant defendant's motion for a new trial and/or to arrest judgment because of the admission of character evidence testimony in plaintiff's case in chief?

(7) Should the trial court grant defendant's motion for a new trial or to arrest judgment because previous litigation before the Pennsylvania Human Relations Commis-

sion acted as an estoppel or res judicata with regard to the case?

## DISCUSSION

### 1. *Defendant's Motion for Judgment n.o.v. Was Denied Because There Was Sufficient Evidence To Submit the Case to the Jury*

In support of her motion for judgment n.o.v., defendant argues that the verdict was contrary to the weight of the evidence because plaintiff did not meet her burden of proof with respect to the elements for defamation set forth in 42 Pa.C.S. §8343(a). This court was not persuaded by that argument.

In reviewing a motion for judgment n.o.v., "[t]he evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor." *Jones v. Constantino,* 429 Pa. Super. 73, 81, 631 A.2d 1289, 1293 (1993), citing *Moure v. Raeuchle,* 529 Pa. 394, 402, 604 A.2d 1003, 1007 (1992). The motion may only be granted in a clear case where no two reasonable minds would disagree that the verdict is improper. *Id.* Furthermore, "[o]ur system vests the responsibility of determining the facts with the jury and [the court] will not upset their findings absent a showing that the verdict is capricious, against the weight of the evidence and resulted in a miscarriage of justice." *Mitzelfelt v. Kamrin,* 526 Pa. 54, 61-62, 584 A.2d 888, 891 (1990), quoting *Gajkowski v. International Brotherhood*

*of Teamsters,* 515 Pa. 516, 531, 530 A.2d 853, 861 (1987).

In the instant case, the court did not find the evidence in favor of plaintiff to be insufficient or to warrant overturning the verdict. At trial, plaintiff's burden of proof on her defamation claim, as codified at 42 Pa.C.S. §8343, was as follows:

"*(a) Burden of plaintiff.*—In an action for defamation, the plaintiff has the burden of proving, when the issue is properly raised:

"(1) The defamatory character of the communication.

"(2) Its publication by the defendant.

"(3) Its application to the plaintiff.

"(4) The understanding by the recipient of its defamatory meaning.

"(5) The understanding by the recipient of it as intended to be applied to the plaintiff.

"(6) Special harm resulting to the plaintiff from its publication.

"(7) Abuse of a conditionally privileged occasion." *Id.* at section 8343(a).

A "communication is . . . defamatory if it ascribes to another conduct, character or a condition that would adversely affect his fitness for the proper conduct of his proper business, trade or profession." *Constantino v. The University of Pittsburgh,* 766 A.2d 1265, 1270 (Pa. Super. 2001), quoting *Maier v. Maretti,* 448 Pa. Super. 276, 282, 671 A.2d 701, 704 (1995). "Statements by a

defendant imputing to the plaintiff . . . conduct incompatible with plaintiff's business constitute slander per se." *Brinich v. Jencka,* 757 A.2d 388, 397 (Pa. Super. 2000).

Defendant contends that plaintiff did not meet her burden of proof because the only evidence presented at trial to establish the defamation was the testimony of Deputy Director William Johnson of the Philadelphia Police Advisory Commission.[3] See defendant's post-trial motion, p. 2. Defendant maintains that Mr. Johnson's testimony was insufficient to meet plaintiff's burden of proof required under the law; therefore, she is entitled to judgment n.o.v. *Id.*

Examining the record in its entirety, taking all the inferences in favor of plaintiff as the verdict winner, it is clear that there was sufficient evidence to sustain the verdict of liability against defendant on plaintiff's defamation claim. During the trial, there was evidence that defendant telephoned the Police Advisory Commission on March 26, 2003 and spoke to Mr. Johnson. N.T. 5/4/05, pp. 102-103. He testified that during the telephone conversation, defendant said "that she felt Sgt. Byrd was mentally disturbed." *Id.* at 105. Defendant told Mr. Johnson that "she believed that Sgt. Byrd's child belonged to Commissioner Sylvester Johnson." *Id.* Defendant also expressed to Mr. Johnson that Sgt. Byrd "had tortured her family over a period of time, and that she had threatened her." *Id.* at 106. Additionally, during defendant's own testimony, she admitted

---

3. William Johnson is not related to Philadelphia Police Commissioner Sylvester Johnson.

telling Mr. Johnson "what my husband told me that Miss Byrd told him, that she was mentally ill." N.T. 5/5/05, p. 175. Within the same context defendant then told Mr. Johnson that plaintiff is "a police officer with a gun or a weapon, and that [defendant] was concerned for [her family]." *Id.* at 176.

Both Mr. Johnson's testimony and defendant's own testimony demonstrate that the statements were within the definition of slander per se. It is difficult to reasonably suggest that defendant's statements that plaintiff is "mentally ill" and her child was fathered by Police Commissioner Johnson are open to interpretation as to whether they are defamatory. Furthermore, the context in which defendant's statements were made could very well lead the hearer to believe that plaintiff was not fit to perform her duties as a police officer. The court notes that plaintiff is a police sergeant, working directly for the police commissioner, a position where sound judgment is especially crucial. Within this context, the accusations in the statements of defendant must be viewed as capable of a defamatory meaning.

This court included a jury instruction on slander per se and properly left it for the jury to determine if defendant did in fact defame plaintiff. Credibility determinations are for the jury, which "is entitled to believe all, part, or none of the evidence presented." *Randt v. Abex Corp.,* 448 Pa. Super. 224, 234, 671 A.2d 228, 233 (1996). This court could not grant defendant's motion for judgment n.o.v. because crucial determinations depended on weighing the testimony of the witnesses and this task was solely within the province of the jury. The courts should not use judgment n.o.v. to invade that

province. *Ludmer v. Nernberg,* 433 Pa. Super. 316, 322, 640 A.2d 939, 942 (1994). Both Mr. Johnson and defendant testified regarding defendant's statements about plaintiff, and based upon this testimony the jury determined that plaintiff had been defamed. The evidence was sufficient and this court could not substitute its judgment for that of the jury's.

### 2. Defendant's Motion for a New Trial Was Denied Because There Was Sufficient Evidence Defendant Abused Her Conditional Privilege

Defendant contends that the statements she made to William Johnson were done under conditionally privileged circumstances. It is defendant's position that she sought help and advice from the Police Advisory Commission because she was "legitimately attempting to protect her own interests." Defendant's motion for post-trial relief p. 2. Under Pennsylvania law, a defendant in a defamation action may raise the defense that the communication was privileged. The burden is on the defendant to prove the privileged character of the occasion on which the communication was published. 42 Pa.C.S. §8343(b). As stated by our Superior Court in *Miketic v. Baron,* 450 Pa. Super. 91, 101-102, 675 A.2d 324, 329 (1996):

"Communications made on a proper occasion, from a proper motive, in a proper manner, and based upon reasonable cause are privileged. . . . 'An occasion is conditionally privileged when the circumstances are such as to lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that facts exist which another sharing

such common interest is entitled to know.' . . . Thus, proper occasions giving rise to a conditional privilege exist when (1) some interest of the person who publishes defamatory matter is involved; (2) some interest of the person to whom the matter is published or some other third person is involved; or (3) a recognized interest of the public is involved. . . . Once a matter is deemed conditionally privileged, the plaintiff must establish that the conditional privilege was abused by the defendant." (citations omitted)

After reviewing the record, this court finds that even if defendant communicated with the commission under conditionally privileged circumstances, there was sufficient evidence presented at trial for the jury to conclude that defendant abused that privilege. A conditional privilege may be defeated upon a showing of either negligence or malice. *Miketic,* 450 Pa. Super. at 102, 675 A.2d at 329. The conditional privilege is also abused "when the publication . . . includes defamatory matter not reasonably believed to be necessary for the accomplishment of the purpose." *Id.*

Here, plaintiff introduced sufficient evidence to meet her burden of demonstrating abuse of the conditional privilege. The evidence was sufficient for the jury to conclude that defendant communicated in at least a negligent manner several defamatory falsehoods concerning plaintiff, and that defendant's publication of the information included defamatory matter not reasonably believed to be necessary to accomplish her purposes.

Defendant testified that because she had been harassed by plaintiff, a police officer advised her to file a complaint with the Police Advisory Commission for protection.

N.T. 5/4/05, p. 181. However, even if defendant called the commission to make a legitimate complaint about plaintiff because she was genuinely concerned about her family's safety, one must question how reporting that "she believed that Sgt. Byrd's child belonged to Commissioner Sylvester Johnson" could possibly help her to resolve her concerns. Moreover, although defendant thought it was necessary to report this information in a telephone conversation, she did not follow up by filing a formal complaint with the commission. N.T. 5/4/05, p. 106; N T. 5/5/05, pp. 176-77. Defendant's failure to actually file a formal complaint may very well have led the fact-finder to believe that defendant did not call the commission to actually obtain help, but to report information that could possibly injure plaintiff's professional reputation as a police sergeant. Accordingly, there was sufficient evidence for a jury to conclude that defendant abused her conditional privilege, and therefore, defendant's motion was denied.

### 3. Defendant's Motion for a New Trial and/or To Arrest Judgment Was Denied Because the Court Did Not Err by Not Declaring a Mistrial After Plaintiff Made Racial Remarks

Defendant's argument is that this court erred in not granting a mistrial after plaintiff made certain racial remarks during her testimony at trial. See defendant's post-trial motion, p. 2. In reviewing a trial court's admission of testimony, the Superior Court will reverse only if there has been an abuse of discretion or error of law. *Gatto v. Kisloff,* 437 Pa. Super. 328, 331, 649 A.2d 996, 997 (1994). A mistrial is only appropriate where the oc-

currence is so inflammatory and prejudicial as to preclude a fair trial and to undoubtedly influence the jury, distracting the minds of the jurors from pivotal issues and influencing their verdict. *Harsh v. Petroll,* 840 A.2d 404, 432 (Pa. Commw. 2003), citing *Commonwealth v. Brown,* 544 Pa. 406, 676 A.2d 1178 (1996), *cert. denied,* 519 U.S. 1043 (1996). In evaluating whether a request for a mistrial is unreasonable, the record must be reviewed to fully appreciate the testimony in the context in which it was made and any subsequent remedial actions designed to remove any prejudicial effects. *Harman ex rel. Harman v. Borah,* 562 Pa. 455, 468, 756 A.2d 1116, 1123 (2000).

Defendant argues that she was prejudiced by plaintiff's racial remarks because the jury was predominantly African-American. See defendant's post-trial motion, p. 2. However, at trial, this court correctly denied defendant's motion for a mistrial. N.T 5/5/05, p. 58. A review of the record reflects that plaintiff testified to the racial remarks defendant allegedly said to her during a dispute in order to give a background to the contentiousness of the dispute between them, and how their dispute escalated to the alleged defamation.

The court notes that the ongoing dispute between plaintiff and defendant arose within the context of a racial incident and that the racial slurs were also introduced in the testimony of other witnesses. Police Officer Cassandra Mathis, an officer previously assigned to "conflict prevention resolution," a special unit for racial and bias incidents, testified that she went to Poquessing Creek Lane because she received a call regarding a racial incident between two neighbors. N.T. 5/4/05, pp. 124-25.

Officer Mathis said that she interviewed defendant and that defendant acknowledged calling the plaintiff "a nigger"—one of the remarks that plaintiff attributed to the defendant. *Id.* at 127.

There is no way of determining whether plaintiff's remarks distracted the minds of the jurors from pivotal issues and influenced their verdict. See *Harsh v. Petroll, supra.* However, this court instructed the jury that they were "to disregard the previous comments of the witness about racial remarks." See N.T. 5/5/05, pp. 58-59. Through this instruction, the court took appropriate subsequent remedial action to cure any prejudicial effects of plaintiff's remarks. For the reasons set forth above, the court did not err by not declaring a mistrial, and therefore, the defendant's motion for a new trial is denied.

### 4. *Defendant's Motion for a New Trial and/or To Arrest Judgment Was Denied Because the Trial Court Correctly Allowed the Issue of Punitive Damages To Be Presented to the Jury*

At trial the court permitted the issue of punitive damages to go to the jury. N.T. 5/6/05, p. 23. The court instructed the jury:

"[I]f you find that the conduct of the defendants was outrageous, you may award punitive damages as well as compensatory damages in order to punish the defendants for their conduct and to deter the defendants and others from the commission of like actions. A person's conduct is outrageous when he or she acts with a bad motive or when he or she acts with reckless indifference

to the interests of others. If you decide that the plaintiff is entitled to an award of punitive damages, it will be your job to fix the amount of such damages. In doing so, you may consider any and all of the following factors: The character of the defendants' act; the nature and extent of the harm to the plaintiff that the defendants caused or intended to cause; the wealth of the defendants insofar as it is relevant in fixing an amount that will punish them and deter the defendants and others from like conduct in the future." N.T. 5/6/05, pp. 67-68.

Defendant argues that instructing the jury on punitive damages was error because "among other things, there was no evidence presented to the jury as to the defendant's ability to pay an award of punitive damages." Further, there was "insufficient evidence to sustain plaintiff's burden of showing malice or recklessness." See defendant's post-trial motion, p. 3.

The Pennsylvania Supreme Court has held that in order to award punitive damages to a private party plaintiff in a defamation suit, a jury must conclude that there was clear and convincing evidence that the defendant acted with "actual malice." *Hepps v. Philadelphia Newspapers Inc.,* 506 Pa. 304, 485 A.2d 374 (1984), *rev'd on other grounds,* 475 U.S. 767 (1986). "Actual malice" means "that the defamatory publication was made either with knowledge that it was false or with reckless disregard of whether it was false." *Banas v. Matthews International Corporation,* 348 Pa. Super. 464, 502 A.2d 637, 640 (1985). Our Supreme Court has also stated when determining the proper amount of punitive damages "the jury has the function of weighing the conduct of the tort-

feasor against the amount of damages which would deter such future conduct. In performing this duty, the jury must weigh the intended harm against the tort-feasor's wealth." *Kirkbride v. Lisbon Contractors Inc.,* 521 Pa. 97, 555 A.2d 800, 803 (1989).

Here, defendant contends that there was no evidence presented at trial that defendant acted with malice or recklessness, and no evidence that defendant had an ability to pay the $15,000 punitive damages award. First, the jury had before it evidence that defendant told the Police Advisory Commission that plaintiff's child was fathered by the Police Commissioner. This statement was entirely unrelated to the work of the PAC. The jury was well within its right to conclude that defendant made the statement out of sheer malice and with the intent to harm the plaintiff's reputation. Second, the jury had the evidence that defendant failed to file a formal complaint against the plaintiff with the PAC. From that evidence, the jury could properly conclude that the defendant's statements to the PAC that plaintiff was mentally ill, was dangerous, and had threatened defendant and her family were malicious and not made for a proper purpose and were, instead, made solely to injure the plaintiff.

Regarding evidence of defendant's wealth, the jury heard evidence that defendant has lived at the Poquessing Creek Lane address for 14 years. N.T. 5/4/05, p. 179. Additionally, the jury was shown photographs of defendant's house and observed what she wore in court during the trial. From these observations alone, the jury could have reasonably come to a conclusion regarding defendant's wealth. The jury also heard testimony that defen-

dant drives a gray Mitsubishi Galant. N.T. 5/5/05, p. 54. The jury was made aware that defendant's husband is gainfully employed, *id.* at 15, 145, 149; and that he took a vacation, presumably with his family. *Id.* at 32. The jury also heard that defendant had hired an attorney for previous litigation with plaintiff at the Pennsylvania Human Relations Commission. *Id.* at 24.

All of this was proper evidence from which the jury could infer the defendant's wealth. From this evidence the jury could properly infer that defendant could afford a $15,000 punitive damages award. Accordingly, defendant's motion for a new trial is denied.

## 5. *Defendant's Motion for a New Trial or a Remittitur Was Denied Because the Jury's Award Was Not Shocking to the Conscience*

Defendant argues that she is entitled to a new trial or in the alternative a remittitur because the damages awarded by the jury were excessive and so unconscionable as to shock the conscience of the court. Defendant's post-trial motion, p. 3. Defendant maintains that this is particularly so, since there is no nexus between evidence of harm suffered by plaintiff and defendant's alleged acts. *Id.* This court was not persuaded by this argument.

The decision whether to deny a new trial or to deny remittitur when the verdict is challenged as excessive is committed to the sound discretion of the trial court and the court's decision will be reversed only if there is a clear abuse of that discretion. *Krysmalski v. Tarasovich,* 424 Pa. Super. 121, 147, 622 A.2d 298, 312 (1993) (en

banc); *DiSalle v. P.G. Publishing Co.,* 375 Pa. Super. 510, 567, 544 A.2d 1345, 1375 (1988). "On appeal, the Superior Court is not free to substitute its judgment for that of the fact-finder. . . . Rather, it is our task to determine whether the post-trial motions judge committed a 'clear' or 'gross' abuse of discretion when conducting its initial evaluation of a defendant's request for remittitur." *Doe v. Raezer,* 444 Pa. Super. 334, 340-41, 664 A.2d 102, 105 (1995).

The duty of assessing damages is within the sole province of the jury. As the trier of fact, it alone weighs and determines the veracity and credibility of the witnesses and weighs their testimony to arrive at an amount of damages which it determines will fairly compensate the plaintiff for her loss. *Doe,* 444 Pa. Super. at 341, 664 A.2d at 105; *Stoughton v. Kinzey,* 299 Pa. Super. 499, 504, 445 A.2d 1240, 1243 (1982).

The trial court may grant a new trial on the ground of excessiveness or grant a remittitur only when the evidence of record clearly demonstrates that the jury's verdict was the product of partiality, caprice, prejudice, mistake or corruption. *Delahanty v. First Pennsylvania Bank N.A.,* 318 Pa. Super. 90, 117, 464 A.2d 1243, 1257 (1983); *Doe,* 444 Pa. Super. at 340, 664 A.2d at 105. "[I]t is the duty of the court to enforce the jury's verdict unless the circumstances cry out for judicial interference." *Daley v. John Wanamaker Inc.,* 317 Pa. Super. 348, 352, 464 A.2d 355, 358 (1983). The grant of a new trial is warranted "only where injustice of the verdict stands forth like a beacon." *Fischer v. Troiano,* 768 A.2d 1126, 1129 (Pa. Super. 2001).

Guided by this standard of review, there is no evidence that the verdict resulted from passion, caprice, prejudice, partiality or corruption and, therefore, neither a new trial nor a remittitur was granted. The jury's award of $10,000 for compensatory damages and $15,000 for punitive damages to plaintiff in this defamation claim did not shock the court's sense of justice. When a communication is found to be slander per se, the plaintiff need not prove any pecuniary loss. The defendant will automatically be liable for the actual harm suffered as a result of the communication. See *Brinich v. Jencka,* 757 A.2d 388, 397 (Pa. Super. 2000). Whether or not there was actual harm was for the jury to decide. *Walker v. Grand Central Sanitation Inc.,* 430 Pa. Super. 236, 250, 634 A.2d 237, 244 (1993). A review of the record indicated that the jury was presented with ample evidence to support the amount of the verdict. The jury weighed the evidence and found that plaintiff was harmed by defendant's slanderous statements. Accordingly, defendant's motion for a remittitur or a new trial was denied.

### 6. Defendant's Motion for a New Trial Was Denied Because the Issue Regarding the Admission of Character Evidence in Plaintiff's Case in Chief Was Waived

At trial, the court permitted plaintiff to present reputation evidence in her case in chief, by allowing FBI Special Agent Mark Johnson, Commissioner Sylvester Johnson's son, to testify regarding plaintiff's good character. See N.T. 5/4/05, pp. 165-68. Defendant's post-trial motion claims that it was error to permit this testi-

mony because it was evidence of good character, and such evidence is inadmissible unless one's good character has been attacked. See defendant's post-trial motion, p. 3. Defendant waived this issue by failing to object at trial to the introduction of this evidence on that ground, and by failing to brief this issue in her post-trial motions brief.

When plaintiff attempted to question Special Agent Johnson about specific incidents of conduct regarding the plaintiff's character and reputation, defense counsel objected only on the ground that "character cannot be proved by specific instances" of conduct. N.T. 5/4/05, p. 158. During the side-bar discussion on the objection, defense counsel never objected to the introduction of character evidence on the ground that such evidence was inadmissible because plaintiff's reputation had not been attacked by the defendant. On the contrary, although defense counsel argued that reputation is not an element of a cause of action for defamation, he agreed that evidence regarding plaintiff's reputation for chastity *was* relevant and admissible. N.T. 5/4/05, pp. 160-61, 164. When trial resumed, defense objections to questions regarding plaintiff's general reputation were sustained. N.T. 5/4/05, pp. 166-68. Defendant did not object to questions asking Special Agent Johnson whether the plaintiff was a moral person. N.T. 5/4/05, pp. 168-69.

After cross-examining Special Agent Johnson as to the basis for his knowledge of plaintiff's reputation in the community, defendant moved to strike his testimony "on the grounds that his contacts with the com-

munity and what he has heard renders him incompetent to give an opinion that's relevant in his case." N.T. 5/4/05, p. 173. Defendant never moved to strike on the ground that character evidence was inadmissible because plaintiff's character had not been attacked by the defendant. The court denied the motion to strike. N.T. 5/4/05, p. 177.

Because defendant failed to object to the introduction of this evidence on the ground that character evidence is inadmissible unless one's good character has been attacked, she waived that issue as a ground for a new trial. Pa.R.E. 103(a)(1); Pa.R.C.P. 227.1(b)(1); *Commonwealth v. Arroyo,* 555 Pa. 125, 142, 723 A.2d 162, 170 (1999) ("it is beyond cavil that if the ground upon which an objection is based is specifically stated, all other reasons for its exclusion are waived").

Defendant also waived this issue by failing to discuss it in her post-trial motion brief or to argue it during the hearing on post-trial motions. "Failure to set forth an argument in briefs filed in the court in support of post-trial motions constitutes a failure to preserve the issue or issues not argued." *Jackson v. Kassab,* 812 A.2d 1233, 1235 (Pa. Super. 2002), quoting *DiSalle v. P.G. Publishing Co.,* 375 Pa. Super. 510, 546, 544 A.2d 1345, 1364 (1988). Accord, *Kraus v. Taylor,* 710 A.2d 1142, 1146 (Pa. Super. 1998) ("an issue raised in a post-trial motion is waived unless it is briefed or argued in post-trial proceedings"), *appeal dismissed,* 560 Pa. 220, 743 A.2d 451 (2000). Defendant abandoned and waived this issue.

### 7. Defendant's Motion for a New Trial or To Arrest Judgment Was Denied Because Previous Litigation Before the Human Relations Commission Did Not Act As an Estoppel or Res Judicata With Regard to the Present Case

On October 8, 2003, plaintiff filed a complaint against defendant with the Pennsylvania Human Relations Commission (PHRC), alleging that defendant engaged in conduct that was racially based and that defendant retaliated against her for filing claims with the PHRC. There was a full hearing held before a PHRC examiner, and the examiner issued a stipulations of fact, findings of fact, conclusions of law, opinion, recommendation and final order. Defendant filed a motion for a nonsuit based on the PHRC decision, which was denied by the court. N.T. 5/5/05, pp. 184-85. Defendant argues that the litigation before the PHRC acted as an estoppel or res judicata with regard to plaintiff's defamation action. See defendant's post-trial motion, p. 3. This court disagrees.

For technical res judicata to apply, there must be a concurrence of four conditions: (1) identity in the thing sued upon or for; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of the quality or capacity of the parties suing or sued. *Patel v. W.C.A.B. (Sauquoit Fibers Company),* 88 Pa. Commw. 76, 79, 488 A.2d 1177, 1179 (1985). "Under the doctrine of collateral estoppel, the determination of a fact in a prior action is deemed conclusive between the parties in a subsequent action even though the cause of action is different, where the fact was actually litigated in the prior action, was essential to the judgment in the prior action, and was determined by a valid and

final judgment." *Burr v. Callwood,* 374 Pa. Super. 502, 543 A.2d 583, 585 (1988).

In this case, the issues presented in plaintiff's defamation claim are not identical to the issues presented before the PHRC examiner. In the PHRC proceeding, the ultimate issue under consideration was whether defendant racially discriminated against and harassed plaintiff, whereas plaintiff's defamation claim addressed whether defendant made defamatory statements regarding plaintiff. In the PHRC hearing, the examiner did not specifically find that defendant did or did not make defamatory statements against plaintiff. A careful review of the PHRC's stipulations of fact, findings of fact, conclusions of law and opinion reveals that there was a finding of fact that plaintiff alleged in a complaint that defendant had called the Police Advisory Commission and reported that plaintiff had a relationship with Commissioner Johnson. However, nowhere in those findings did the PHRC address the issue of whether defendant had defamed plaintiff by making that call. In the absence of any ruling on that precise issue by the PHRC, it was proper for the issue to be submitted to the jury to decide in the present case. Simply put, the issue of defamation was never litigated before the PHRC. Therefore, neither collateral estoppel nor res judicata precluded litigation of the defamation issue in the present action.

## CONCLUSION

For the reasons stated above, this court erred in granting the defendant's motion for a new trial. The Superior Court should reverse the order granting the new trial and reinstate the jury's verdict in favor of plaintiff, Kimberley Byrd.